in his official capacity as Attorney General of the State of Texas, Appellant, Ms. Pettit for the Appellant, Ms. Branch for the Appellant. Ms. Pettit, good morning. Thank you, Judge Henderson, and may it please the Court, the First Amendment conveys neither a license to commit fraud nor the inalienable right to shop for the most favorable forum in which to litigate whether one has committed fraud. The easiest way for this Court to correct the District Court's erroneous conclusion to the contrary is to join in sister circuits in holding that a pre-enforcement challenge to a non-self-enforcing administrative subpoena is not cognizable in federal court. In the alternative, it should hold that this federal court is not the appropriate location to adjudicate the validity of an effort by the Attorney General of Texas to investigate potential violations of Texas law in Texas, an effort which is in any event entirely valid. Ms. Pettit, what in your view is the actual possible violation of Texas law here? The actual possible violation, and I would point this Court to 17.46b8, is commercial disparagement of the good or service of another. In this instance, there is reason to think that Media Matters made factual representations about what is now actually previously Twitter's brand protection technology that were factually inaccurate and possibly harmed advertisers and consumers in Texas. So is it your position that Attorney General Paxton can issue a CID, which is fairly intrusive, it asks for a lot of information, to any news outlet in the United States that publishes a story that he believes contains something that might be misleading? Not at all, Your Honor. In this particular instance, and I would point this Court to page 472 of the Joint Appendix, where Mr. I believe it's pronounced Carsoni, the CEO of Media Matters, was responding to the CID and discussed how this is a factual representation about their brand, about X's brand protection technology. As they put it, no matter how you slice it, they are misrepresenting what they're doing. Does that answer my question? So whatever the nature of the misrepresentation, does Attorney General Paxton believe that he can issue a CID to any news outlet in the country because somebody in Texas might read the article if that article contains something that he thinks is misleading about a business? That is not sufficient under Texas law to constitute commercial disparagement. He does have the ability to issue a CID if he thinks that there is reason to believe that the news outlet has violated the Texas Deceptive Trade Practices Act. But it's not just that they think that it's unfair or misleading. There has to be a connection to a good or service in Texas. And here, advertisers are X's primary customer, and those are, and the misrepresentations about that brand technology is a violation, potentially a violation of the DCPA. So anything that he thinks is misleading that could affect advertising income, he could issue a CID to any news outlet in the entire country? Yes, Your Honor, if it has the sufficient nexus to Texas. But that's one of the things, and it's important to point this out, that the CID... What's the nexus to Texas? In this particular instance, and this goes, and the federal court in the X lawsuit found a similar, that it affects advertisers in Texas. And that is what one of the issues that the CID is actually attempting to investigate, is whether there is an adequate nexus to Texas. And if upon investigation, we conclude there's not, we're not going to bring an enforcement action. But this court has recognized, and I point this court to Reporters Committee for the Freedom of the Press on page 1051, that investigations of that type are necessary to protect the liberties that we enjoy, because there has to be some room for that. Otherwise, the news outlet would be claiming an exemption to generally applicable law, which the Supreme Court has repeatedly recognized they do not have. So, Ms. Padgett, the Attorney General, Attorney General Paxman, filed an amicus brief in the Northern District of Texas in the case of ExxonMobil Corporation versus Maura Tracy Healy. And that was about a CID issued by the Attorney General of Massachusetts. And I was just looking at the table of contents of this brief, and it says, Attorneys General should act impartially. Attorneys General should not employ legal power to tip the scales in a policy debate. Attorneys General shouldn't target critics. Attorneys General shouldn't abuse of subpoena power. And politicized investigations undermine public confidence. I'm just wondering if you think any of these principles could be viewed as applying in this case. Your Honor, I would point to the specific content beyond the table of contents of that brief. And I point the Court in particular to the discussion in that brief about how the CID in question wasn't just aimed at disseminating accurate information. It was aimed at changing conduct outside of the courtroom. That is different from what is happening here. We are simply investigating whether there has been a misrepresentation. Media Matters is perfectly able and we have no problem with them saying anything they want and doing anything they want in the public policy space as long as they are not making material misrepresentations of fact that would affect Texas consumers. Yeah. It also says here under targeting critics at JA 75, the First Amendment stands as a bulwark against government action designed to suppress ideas or information or to manipulate the public debate through coercion rather than persuasion. You don't think that applies in this case? No, Your Honor, I do not. I think that in this case, the Attorney General has issued, and this goes to the question about whether this is litigating the merits is even appropriate, has issued simply an investigative request asking for information about whether these factual statements are true. If they are, they are not the basis of an enforcement action. And I would point this Court in that this goes to an important thing that gets conflated in a lot of the briefing here. The difference between the injury that Media Matters has asserted and the mechanism by which they have asserted it has occurred. Specifically, a chill to their reporting activities is the injury that is caused by the mere issuance of the CID. And the reason I separate those out is on page 11 of the Laird v. Tatum decision, the Court noted that the mere existence of a chill is insufficient without a regulatory, prescriptive, or compulsory government act. That statement was made 10 years after. The act is in the issuance of the CID? No. The act is not. Because as Reisman held eight years, I'm sorry, I said 10, eight years before the Laird decision, that a non-self-enforcing administrative subpoena like this CID is not compulsory. Reisman didn't involve an alleged chill of First Amendment activity. No, but Laird did. And Laird was after Reisman. And Reisman actually, I would like to tweak that just a bit. It did not involve an alleged chill under the First Amendment. It did involve an alleged chill of communication under the Sixth Amendment because it involved communications with a lawyer. And as this Court's sister circuits have held in the intervening decades, that previous ruling about the compulsory nature of a CID applies in First Amendment cases. In particular, I'd point this Court to Google against two others. So why aren't those cases distinguishable? Because in this case, the assertion is the CID was issued. That's the government act. And it has chilled the First Amendment activity of media matters. And there are affidavits that attest to how they have had to alter their practices because of the CID. Because the chill by itself is not sufficient unless there is compulsion. And as Reisman recognized, as Balfoursh recognized, as Anheuser-Busch recognized, there's no compulsion with a non-self-enforcing CID. And as this Court – and I'd also point – that might also allay some of this concern in Rayburg v. Polk, which is a case that's on the merits. It's not on the right hand. It just seems to me that the allegations in this case are a little bit different from the sources that you're citing because what they're saying is, even though there hasn't been an action to enforce the CID, the fact that it's there and it could be enforced is affecting their ability to do their work the way they used to do it. And that just seems different from what you're citing. Except in Laird, it was the same situation where it was the existence of a government investigation and the Court found that was insufficient to create a cognizable injury. I'd also point this Court to page 51 of the Younger opinion, which says that the mere existence of a chill, or page 46, the anxiety associated with an investigation, is not itself enough to enjoin an otherwise lawful state of action. What do you – what are you resting on? Ripeness, failure to say the cause of action under the First Amendment, standing? I'm not – what? All of the above, Your Honor. There are numerous doctrinal problems with this case. Our primary argument is Reisman because that is the cleanest under this – under this Court's sister circuit case law. But there's also personal jurisdiction. Including the Fifth Circuit and Greenwald? Including the – that Greenwald was a First Amendment – was a personal jurisdiction case, not a Ripeness case. But it subsumed these same questions. I don't believe – If it wasn't Ripeness, the case should have – the Court should have knocked it out. Fifth Circuit didn't. In that particular case, it wasn't a request for information. It was a cease-and-desist letter, which is important because the request for information is what this Court said every citizen is subject to in Reporters Commission against AT&T. Here, we have not concluded that there is another – that there has been any violation of law, and we may yet conclude there has not been. We have simply asked for information because the news outlet is not exempt by itself from the DTPA. That is consistent with the Supreme Court's decisions in Fransburg, in Bartnicki. The news outlets are required to follow the law just like everybody else. In terms of the – Isn't that a fishing expedition, what you've just described? That you don't know whether there's even a connection to Texas, but you want to issue the CID to figure out if there is? No, Your Honor. We have – we think that there is a good faith basis to think there is a connection to Texas, and we have issued a CID. And the first three requests are all about is there a connection to Texas. If Media Matters provides information to suggest that there's not, then we wouldn't bring an enforcement action. But the enforcement action – and this goes to Judge Edwards' question about whether or not the Greenwald case was right by itself. In the Fifth Circuit and other contexts that are related, they have said that a threat to bring an enforcement action is where you have the cognizable injury, which is compulsion or constraint. That's consistent with the Laird decision that we were discussing earlier. What we don't have here is compulsion. They are not going to be penalized for not complying with the CID unless and until there's a court order requiring them to do so. And they can raise all of these concerns in a State court proceeding, assuming one is ever brought. And that's what makes this case not right. It is entirely possible that an enforcement action will never be brought, because it will be determined that this is not a useful use of it. Well, the problem for you is if there are chilling effects and if that's a cognizable cause of action, your rightness thing falls apart. It's present. It's available. It's something that they can litigate now if there are chilling effects. Your Honor, that would be a departure from every one of the cases that this Court that the Sixth Circuit of this Court have brought. No, not at all. Twitter, for example, which looks faceably good for you, is distinguishable because the Court there said there were no chilling effects. There are chilling effects here. To talk to talk. There's something to proceed. The Court in that case was saying the case would have gone forward had there been standing to pursue chilling effects. There were no chilling effects. Now, here the question is, they're claiming there are chilling effects, and it looks like the complaint is different here than it was in Twitter. Your Honor, it's no different. In fact, I litigated Twitter. And I would point this Court to page 475 of the Twitter opinion where the Court talks about the affidavits and the allegations in that case. And my friend on the other side has suggested there were no affidavits in Twitter. That's simply factually wrong. And it said, for example, page 475, it is already that Twitter has put it in fourth. It is already being forced to weigh the consequences of a burdensome investigation every time it contemplates taking action. That's remarkably similar to Mr. DeMiero's statement on page 172 of the Joint Appendix saying that stories that would normally be published from our usual vetting process, including stories about media matter coverage, are, and I quote, receiving greater internal scrutiny and risk calculation. It's the same allegations. And it's the same allegations that could be made for any investigation of a fraudulent claim. So if this Court, or a claim of fraud, if this Court were to hold in media matters favor, it would depart from Twitter, from Rayburg v. Polk, from all of the cases that are cited in our case.  It doesn't depart from Twitter. It depends upon how you look at the First Amendment claims. And Reisman doesn't help you at all because they didn't decide on rightness. I'm not sure what Reisman says. I don't think any of you are either. But Reisman says there was no cognizable, that there was no compulsion and therefore no cognizable injury. And your sister circuits have either dealt with that under the concept of rightness, which we think is the better way to look at it because what Reisman is talking about is whether or not there were contingencies that have not yet come to force. And in modern jurisprudence, that is a rightness question. But a number of cases, including the Rayburg ones that I've mentioned a number of times, have found it in whether or not there's a cause of action. Either way, media matters loses. But even if you disagree with me on all of that, there's still a personal jurisdiction problem here about trying to enforce this, trying to litigate against the Texas Attorney General. Because as Burger King noted on page 7475, the foreseeability of an injury in this jurisdiction is insufficient to establish personal jurisdiction as a matter of due process. Can I ask you something about the Texas business code? This hasn't really been addressed in the briefs or by the district court. But I looked at it, and section 17.61G says that the recipient of a demand can file a petition to set aside the demand in the district court in the county where the parties reside. Yes, Your Honor. And if the parties do not reside in Texas, they can do it in Travis County. But why isn't this the county where media matters resides?  So why can't, under this, the plain meaning of this provision, why can't they bring this case in district court in D.C.? Because the, in read in larger context, that is a county within the state of Texas and the district of Columbia. Where does it say that? It doesn't say that anywhere. It says that in, and I would have to, I'd be happy to send you a letter to give you a precise citation, but that particular question has been litigated in another case that, and it was read to be in larger, in larger context of the county because the DTPA only discusses Texas. And Texas. Is that because it anticipates that it will be enforced in Texas? It anticipates that it will be enforced only as to conduct within Texas. It does specifically provide, and I would point this court to 17.61D3, that there can be service outside of Texas by mail. And under those circumstances, it still has to be a violation within Texas, but it does not, but it does not have to be a violation that, that for people that are located in Texas, precisely because we have a national and an international economy and things that happen outside Texas can be effective, can affect the state within the state. And that is why. Now, I understand. It just seems that this provision seems to contemplate if the attorney general chooses to try to enforce the Texas law, you can challenge it in the county where the parties reside, which seems fair. In, in the larger, and in the larger context of the statute, and I'll see if I have it at the table, and if I will, I'll give it to you during rebuttal. But the venue provision in larger, in the larger context of the DTPA provides specifically for venue in Travis County if you don't reside in a county in Texas. And so as a, and so as a result, read in the larger context of the county in Texas is what that's referring to. So you're saying if your argument, your principal argument is this is not ripe, your principal claim should be that the district court should dismiss without prejudice, and if and when the Texas attorney general attempts to move and do anything with the CID, then the case will be resumed. That's your argument? That is the, the question of whether it can be resumed at that particular point becomes a different question under Younger, because as Younger unequivocally stated, the, the longstanding policy of Congress, with very few exceptions, is that issues like this are litigated in state court. And that, and so at that point, there may be a different issue, but the ripeness issue will likely have passed. We'd still would have the personal jurisdiction issue, because the, the, both the, the only connection. So I'm taking that off the table for this question. I understand your arguments about personal jurisdiction. I'm just focusing on your ripeness. If the district court should have dismissed for want of ripeness, then what you're saying, that's got to be without prejudice. Yes, Your Honor. Until what happens? Until there is, at that, until there is an effort to enforce, at which point there is a compulsion. Then the question will, there will still be other arguments that are related, some of which also relate to Reisman, as this Court, as Your Honor noted, that has dealt with a number of different issues, including whether there is a cause of action to, for a retaliatory investigation, which we respectfully submit that there is not. But the ripeness argument at that point will have been dealt with. But we agree that this should have been dismissed without prejudice, so that media matters can raise all of these issues in state court in response to. But this is a Section 1983 claim. I know it's not, the cause of action doesn't seem to match what you're talking about at the podium, because clearly Federal courts have jurisdiction to look at Section 1983 claims, and that's what this is. Yes, Your Honor. But the basis, and this goes back to the Rayburg and Archer against Chisholm and a number of other cases that we cite in our brief, that a retaliatory investigation that has not ripened into, and this goes to why the two issues are related, has not ripened into an actual enforcement action is not cognizable under 1983. But that's not the cause of action that the plaintiffs are bringing. They don't have to comport their complaint to what you think it should be. Their complaint is that their First Amendment rights are being violated by this investigation, which is retaliatory and chills their First Amendment speech, which seems to be quintessentially something that a Federal court can look at. No, Your Honor. Not under Archer against Chisholm, not under Laird against Tatum, and not under Rayburg. This Court would be departing from all of those authorities to find an investigation by itself is the source of a 1983 claim. All of these claims are being litigated under Section 1983. The question is whether that is a theory that is cognizable for retaliation. Because retaliation involves a number of elements, and the courts that are examining that retaliation have said that the investigation by itself is not an act that will and I believe the phraseology is chill. I think that you argued that retaliation, First Amendment retaliatory investigations are not cognizable. That's something you forfeited. That is something that they have asserted that we have forfeited, and we, in response, we have cited back to this Court its standard for what is preservation, which is that we have raised the issue that this is not a claim on the merits. And one reason that it is not a claim on the merits or a valid claim on the merits is that it is not a cognizable theory under Section 1983. Going back to the ---- Kennedy, you didn't raise the retaliatory investigation below. You didn't object to that. We did, Your Honor. We raised in our ---- You did where? They didn't give a citation. I'll go look at it. I didn't find it the first time around. We raised that this was that they had not shown a likelihood of success on the merits. Did you say there is no such cause of action with respect to retaliatory investigation? I don't remember that. I don't believe that. That's a pretty easy argument to make, if that's what you intended to say. We did not phrase it in that exact way. We phrased that they have not ---- I believe that we phrased it in the way that they had not raised a ---- and I believe the phraseology, I don't remember the exact quote from our brief, was that they have not raised a basis that would chill an ordinary speaker, and that this is an elaboration or a clarification on what we were saying, because it goes to the same element of whether or not the claim ---- That really is not ---- we expect more in order to avoid forfeiture. I respectfully disagree, Your Honor, but I take your point. And the question then, even if that's wrong, have they shown, and this we did raise, is national ---- whether they've shown an actual chill. And under National Treasury Employees Union, they have to on page 1255, and they haven't, in part because this would not be a reasonable ---- something that would cause a reasonable person in their circumstance to have changed their behavior precisely because it's not a ---- for the reasons that it would not be cognizable, but also because their own conduct, and I would point this Court to pages about 420 of the Joint Appendix, shows they weren't, in fact, chilled. And so as a result, even if it were ---- I just don't see how that preserves the argument that there's no such thing as a retaliatory First Amendment investigation. It preserves the argument that they have not raised a retaliatory ---- they have not raised a reason that a person in a similar circumstance would have chilled their speech. That's a species of the same argument. But if the Court disagrees, then it still has all of the other problems, including that they have not shown a chill or retaliatory animus, for that matter. But we'd never even get to that because they haven't shown a cognizable harm. This is going back to Laird v. Tatum, which is from 1972. The Supreme Court said that a chill ---- Kagan, you don't have to repeat yourself on that. What? You don't have to repeat yourself on that. Then, assuming the Court disagrees on that, there's still the personal jurisdiction argument. I see that I'm way over time. You said that you understood ---- you understood our arguments. I'm happy to answer any questions on personal jurisdiction, but we strongly suggest that even if the Court disagrees with me on the meaning of Reisman, that this is not the appropriate forum in which to be litigating this case. Any more questions? Okay. We'll give you a couple minutes in reply. Ms. Branch. Good morning. May it please the Court, Aria Branch, on behalf of the appellees. This is a unique case with very extreme facts. It involves the extraordinary overreach by a retaliatory attorney general who came to D.C. to harm a D.C.-based media organization by serving a sweeping demand for their internal and external documents because he didn't like their speech. And there's a reason why Attorney General Paxson had to come to D.C. to serve Media Matters. That's because Media Matters has no presence in Texas. It doesn't have an office there. It doesn't have a registered agent there. It doesn't engage in trader commerce at all, and it certainly doesn't engage in trader commerce in Texas. The district court's opinion in joining Paxson's demand was well-reasoned and largely based on facts that are not disputed. Paxson did not dispute in the district court that plaintiffs are chilled. Plaintiffs submitted numerous affidavits documenting that chill, how the demand is currently and presently affecting both the stories they chose to publish, their editorial process, and how they had, in fact, actually withheld articles relating to X and Musk because of the chill of the demand that was hanging over their heads. It's also not disputed that Paxson served the CID because of journalism that was published by Media Matters. When Paxson commenced his investigation, he called Media Matters a radical left-wing and anti-free speech organization, and he encouraged other attorney generals to investigate Media Matters along with him. Paxson now argues that despite the fact that he came to D.C. and inflicted harm on a D.C.-based organization, he can't be subject to suit here because his investigation was launched in his official capacity. That argument is unsupported. It's not supported by Ex Parte Young, which says that when an official, a state official, allegedly violates the federal constitution, he is stripped of his official and representative character and subject to suit in his person for the consequences of his individual conduct. His argument would also lead to absurd consequences for the jurisdiction of D.C. courts. Attorney General Paxson just argued that their primary argument in this case is that a plaintiff's lawsuit is not ripe because Paxson has not yet taken steps to enforce. That argument is not supported by Reisman. Reisman, as the Ninth Circuit said in the Twitter v. Paxson case, is not a case about ripeness at all, and it's not a case about the First Amendment. Media Matters and Eric Kanunoki, the plaintiffs in this lawsuit, have shown via affidavits that they submitted to the district court that they were currently and presently being injured. They could not wait for Paxson to decide to enforce the demand and have the CID hanging over every email they send, every editorial decision they make, every article they decide to publish, like the sword of Damocles. They are entitled, because they're suffering a present First Amendment chill, to seek relief, and they sought relief in their home jurisdiction in federal court in D.C. because Paxson came to D.C. and served the demand via his agent, and he inflicted harm on Media Matters in D.C. Why are the claims here different from the claims in Twitter? Twitter is essentially saying, I mean, when you look at this case, there are a lot of layers, like Selene, which we issued here a year ago, where you can look at this and say it's too soon, you know, there's nothing that has happened, there's a possibility of something happened, it's happening, but it hasn't happened yet, and so whether you go a Reisman way or whether you go a Laird way or whether you go a traditional rightness, normally, or often, we would say it has to await a different moment. The way you're trying to get around it is to say, we have a viable claim. Forget all the rest of it, what might happen. We have a viable claim because we've been chilled. We've been injured. So we're in play, and we want an injunction against any further injury of the sort we've already suffered. What cases support that approach? That's correct, Your Honor. And I think the difference of what cases support that approach? The Twitter v. Paxson case supports that approach. Although in Twitter... But Twitter goes the other way. Twitter goes the other way, but it makes very clear that a chill, and I quote from the opinion, a chill, a First Amendment chill, can itself be the harm. And it's very clear that had the court found... Would they cite anything? Does Twitter cite anything? In other words, is there any case... Twitter talks about the possibility only to knock it down. Is there any case that either Twitter or anybody else can point me to that says, yeah, this is a viable notion, the potential chilling effects. I mean, that's the way you will survive. That's the only way, in my view, you can survive all of these other concerns about this is too soon, all of those doctrines. Whichever ones we go to, they're a problem for you because nothing is happening. But your way around that is to say something happened already, and we're showing the likelihood of a continuation of that happening, and therefore, we need relief now. All I'm asking is, is there anything other than Twitter's rejection of that to support that approach? So I would point, Your Honor, to the Cook v. Futrell case from the Fourth Circuit and the Edgar v. Haynes case, also from the Fourth Circuit. Both of those cases recognize that a First Amendment chill is cognizable when the present and ongoing injury is being suffered. And I also would point, Your Honor, to Gray Wall, which is from the Fifth Circuit, Paxson's home circuit, where the New Jersey Attorney General sent a cease and desist letter to a Texas-based company. And the Fifth Circuit both asserted jurisdiction over Gray Wall and found that the First Amendment injury that was being suffered as a result of the cease and desist letter was actionable. And so the bottom line here is that we have asserted a claim, a First Amendment retaliation claim. We have met the elements of that claim. And the merits question here is whether the district court actually abused its discretion in finding that we satisfied the elements of the First Amendment retaliation claim. We've shown that we are engaged in First Amendment-protected conduct. Media Matters is a news organization, which is the hallmark of First Amendment protected speech. We have shown that Paxson issued the demand in response to an article that Media Matters published and that he did so without any basis, without any investigation. He issued the demand a day after X sued Media Matters in the northern district of Texas. And he did so solely, he's admitted that he brought that lawsuit solely based on the allegations made in that lawsuit. And finally, we've shown- I mean, what's the threat of the demand? There it is. I mean, that's the way they're trying to approach it. And it seems to me you have to answer that. There's nothing to it. There it is. And nothing can happen to you unless something happens. And they haven't made it happen. The threat of the demand is that it is an ongoing demand for all of Media Matters documents related to their journalism. And can't you simply, under whatever law is in place, say, we're not responding? We could, and then there would be extreme consequences for that. Under Texas law, Media Matters could be held in contempt for failing to respond. Is there anything to suggest that that's likely? Do you have any reasonable basis for assuming that that is a real threat? I understand the argument about there is a possibility. But what I'm trying to understand is, because otherwise it becomes self-serving. You say, well, we're threatened. We take this to mean bad things, and therefore we are threatened and you have to believe us when we say we're threatened. Well, there are cases that say, as you know, and Selene, we dealt with that, say that's not enough. Just because you feel threatened doesn't mean that the law recognizes you as such. What makes this, what moves the needle on this and puts it in a different category? Well, I think the question on whether or not you feel threatened is, is it reasonable that an objective person would feel threatened based on the CID that's been issued? And the district court answered that question, yes. And I would point out, Your Honor, that Paxson did not challenge the chill allegations below. He waived that, and the district court found- That is another issue, there's no doubt. And they don't have a good answer, at least not that I've heard yet, on that one. Correct, Your Honor. Today, they seem to be challenging the chill allegations that were made in the district court, but below they did not. And the question on the merits, again, is whether or not the district court abused its discretion in finding that we were likely to proceed on the merits. And based on the record that he had before him at the time, I think that answer is clearly yes. I also think- Why is this case more compelling on the chilling effects than the court thought the Twitter case was? Because in Twitter, it's the same theory, but the court rejects it. And they said what was being asserted there was not enough. Why, what distinguishes the complaint here from the complaint that was being reviewed in Twitter? Here, we have put forth affidavits that show from the COO of Media Matters, from the individual reporter who authored the November 16th article that is at issue here, and also from his editor, that Media Matters, the CID is hanging over Media Matters like the sword of Damocles. That every single email document they create could be subject to the turnover to the state of Texas to further an investigation against them. Media Matters is a journalism entity. It has to be able to do its work, and it can't do that with the CID hanging in the air. And I would point, Your Honor, to the comments that I think Judge Pan raised earlier, that Paxson raised when he submitted the amicus brief in the ExxonMobil case, where he specifically said that a CID can have a chilling impact, and that it can affect First Amendment rights. And when a CID is hanging in the air, it does have an impact on the targets of that CID. And so I think the district court found that the declarations and the affidavits that were sworn to and submitted in this case were specific, and that they were particularized, and that they put forward, you know, evidence of chill that was uncontested in the district court. And he had before him a clear record of chill, and that's what makes this case different from Twitter v. Paxson, from Laird v. Tatum, from many of the other cases that Attorney General Paxson cites. In those cases, they simply did not, the plaintiffs simply did not present evidence of a present injury to First Amendment protected speech. I would just turn to the personal jurisdiction argument, just briefly, unless your honors have questions on it. But we think it is very clear that Paxson is a person under the D.C. long-arm statute, to hold otherwise would create absurd consequences, as the district court found for civil jurisdiction in D.C. D.C. courts regularly exercise jurisdiction over federal officials who have their home offices in the district, and other state officials when they come to the district and cause harm. The long-arm statute is satisfied. Paxson both transacted business in the District of Columbia by sending a process server here, which commenced the investigation and resulted in harm to Media Matters and Eric Hanenoke. And he also, we also satisfy a three of the long-arm statute because he committed an act in the district by serving the CID here, and he, that act gave rise to our injury, which is the chill of our First Amendment rights. In terms of due process, I think it is extraordinarily clear that Paxson committed himself to a course of dealing in the district by serving the CID here. The CID, on the face of the front page of it, contemplates that Paxson would come to the District of Columbia to inspect and make copies of any documents that Media Matters had that is responsive to the CID. And so the district court properly found that due process is satisfied because he both sent a process server here, he committed himself to engaging in a course of dealing, and it was absolutely foreseeable that he could be held into court here as a result of that. And also because he inflicted tortious injury on my client here in the District of Columbia. Unless your honors have further questions, I would ask that you affirm the district court's decision in joining Paxson's investigation. Thank you. Thank you. Why don't you take two minutes? Starting with whether we are challenging the allegations of chill here, we are not, as a factual matter, because of the prospect, because of the posture of this case. We are challenging whether it is legally sufficient. And I would point to the what? Legally sufficient. I would point this Court to United Presbyterian, page 1378. Then Judge Salia noted that the chilling effect is cited in the cases upon which they rely as the reason why the government's action is invalid, not whether the plaintiffs have standing to challenge it. That is because the chill, and this goes all — and this — that is a clapper. If absent some sort of compulsory act by the government, that chill is self-inflicted. Here, there is no compulsory act for a lot of the reasons that Judge Edwards was describing, because there are a lot of cases, and my friend on the other side called this extraordinary. It's not. It's a request for information from an entity accused of committing fraud. And their arguments, because the media entities have no greater ability to commit fraud than anybody else, would apply to any entity that is claiming that it receives a fraud request. This Court would be basically saying that it would be a chill to their speech in order to allow to investigate, and that is inconsistent with decades of precedent. Pointing, then, to the question of whether they are under some sort of sort of Damocles, they are not. As the Twitter court noted on page 1176, enforcement is not a rubber stamp in Texas, and they can only be held in contempt if they fail to comply with the government — the court order thereafter. Changing just to a moment for personal jurisdiction, because my friend has suggested that this would create absurd results relating to Federal officers. That's inaccurate, and I would point this Court to 28 U.S.C. 1391e, which creates nationwide service of process and nationwide venue for entity — for Federal officials acting in their official capacity, so that's simply irrelevant. And turning to their arguments on the — on the — on the long-arm statute, they point to the fact that we hired a process server, but their own authority on page 1096 — the Shea at page 1066 equates a courier like a process server with a piece of mail, and mail is insufficient, and because it is an act outside of the jurisdiction that may or may not have effects in the jurisdiction. That is effectively what they are asserting here. Not transaction, not jurisdiction based on a transaction. And they have problems with that because the only way that they can establish that we have a — that the Attorney General has pervasive contacts with the District of Columbia is actually to cite the — the speaking engagements of his subordinates, including, for example, former Solicitor General Stone or Mr. Bosch. The problem with that is they can only tag the Attorney General with those if they admit that this is, in fact, a suit against the office of the Attorney General, which they can't, because this Court unequivocally said in Ferrara that a — a claim against a State agency is a claim against the State which falls outside the personal jurisdiction of this Court. There are no further questions. Kennedy. Are you doubting the authorities that the other side is citing, supporting the notion that chilling effects is a viable notion? Indeed, as they say, Twitter itself says, and the difference here is that the district court judge here made findings, and it's owed some respect, and enough in those findings to support a claim of chilling effects. Are you doubting the — she cited at least three circuits. The circuits that she cited, the only case that comes close to this one is Twitter. We admit that that is their best authority. We suggest that to the extent that Twitter found that an investigation by itself is sufficient to create that type of chill and, therefore, a cognizable injury, it's inconsistent with this Court's ruling in Reporters Committee as well as numerous Supreme Court cases. But even under Twitter, because the evidence that was relied upon is very, very similar to what happened here, even under Twitter, as Your Honor noted, this case should have been dismissed. There are no further questions. We respectfully request you reverse. All right. Thank you.
judges: Henderson; Pan; Edwards